*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. S. HOGAN, Minor.

UNPUBLISHED
October 8, 2019

Nos. 347779; 347780
Jackson Circuit Court
Family Division
LC No. 17-003050-NA

Before: REDFORD, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

In this consolidated appeal, respondent-mother (Docket No. 347779) and respondent-father (Docket No. 347780) appeal as of right the trial court's order terminating their parental rights to their minor child, LSH, under MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to parent). On appeal, mother and father both challenge the trial court's determination that there was clear and convincing evidence to terminate their parental rights under MCL 712A.19b(3)(j). Mother also challenges the trial court's determination that termination was in LSH's best interests. For the reasons stated below, we affirm.

## I. BACKGROUND

In November 2017, the Department of Health and Human Services (DHHS) submitted a petition to the trial court. DHHS alleged that: (1) father physically assaulted mother in LSH's presence; (2) mother took LSH to a river at 1:23 a.m. in an attempt to "baptize" her; and law enforcement found LSH naked and mother was later diagnosed with postpartum depression and psychosis; and (3) mother tested positive for methamphetamine four times and admitted to an investigator that she and father used methamphetamine while pushing LSH in a stroller. Thereafter, the DHHS additionally alleged that: (1) father left LSH without proper care and custody because he was incarcerated on domestic violence charges; and (2) mother stated that father provided her with illicit drugs, such as methamphetamine, that they used together.

In February 2019, after LSH had been in foster care for 15 months, the trial court conducted a termination hearing and terminated respondents' parental rights under MCL 712A.19b(3)(j). The trial court also determined that termination of respondents' parental rights was in LSH's best interests.

-1-

## II. STATUTORY GROUNDS

We review the trial court's determination that a statutory ground for termination has been established for clear error. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). The petitioner bears the burden of establishing by clear and convincing evidence at least one statutory ground for the termination of parental rights. *Id.* In order for this Court to determine that the trial court's factual findings are clearly erroneous, it must be "left with a definite and firm conviction that a mistake has been made." *In re Long*, 326 Mich App 455, 460; 927 NW2d 724 (2018) (quotation marks omitted).

Termination is proper under MCL 712A.19b(3)(j) when "there is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." *Hudson*, 294 Mich App at 268 (quotation marks and alterations omitted).

### A. RESPONDENT-MOTHER

Mother challenges the statutory ground for termination. She argues that she no longer had a substance abuse problem because she no longer used methamphetamine, she was complying and benefiting from the services provided, and more time was warranted for her to finalize the last few steps she needed to take in order to leave father.

In this case, the evidence presented at the termination hearing supported the trial court's determination that there was a reasonable likelihood that LSH would be harmed if she was returned to mother based on mother's conduct and capacity. Over a 15-month span, evidence regarding mother's progress and treatment positively indicated that she had made improvement by only testing positive for methamphetamine once, finding a full-time job, participating in parenting classes, and locating Section 8 housing to become financially independent from father. However, the evidence also revealed that mother showed resistance to substance-abuse counseling, had been intermittently noncompliant, and failed to obtain a medication assessment. There was also evidence that, due to mother's surroundings and association with people who used drugs, she was at risk of a relapse despite her current abstinence. This is particularly significant because the two incidents where mother put LSH in serious danger—mother's attempt to "baptize" LSH and the domestic violence—occurred while mother was under the influence of methamphetamine. Thus, the potential for mother's relapse demonstrated a reasonable likelihood that LSH would be harmed if returned to mother's care.

The record also demonstrates that mother was resistant to the recommendation that she consider planning to care for LSH without father. Acknowledging that continuing the abusive relationship with father would likely cause her to lose LSH, mother said she wished to reconcile with father and attend couples counseling. Mother explained she did not wish to split up the family because the trial court had not ordered her to leave father. Recently, their relationship had been good as father was not controlling "so much." Mother believed that they could stay together if they continued in services, noting that she was "not putting up with much anymore" regarding his "mental abuse" and "control." If the relationship got too bad, mother planned to leave father.

The record demonstrated that father remained emotionally abusive and mother blamed herself for upsetting him by discussing the incident of domestic violence during their couples counseling session in December 2018. Father had also enabled mother's drug use and the domestic-violence incident occurred when both were under the influence of drugs. Mother was aware her relationship with father posed a risk to her as well as to LSH. At one point, mother testified that she would leave father to keep LSH, but then mother opted to remain with father.

The trial court found mother was "still making excuses" for and "still working on her relationship with" father, who was still "scary and threatening and emotionally abusive." In light of this and mother's long-term drug use, the trial court did not clearly err by finding that LSH would likely be harmed if returned to mother's home. Consequently, termination of mother's parental rights was proper under MCL 712A.19b(3)(j). *Hudson*, 294 Mich App at 268.

## B. RESPONDENT-FATHER

Father argues that the trial court improperly terminated his parental rights based on the one incident of domestic violence where he had otherwise shown compliance and improvement and there was no evidence that he had ever harmed LSH. In fact, the trial court never required father and mother to part ways and, thus, it should not have terminated his parental rights on this basis. We disagree.

Contrary to father's argument, the trial court did not improperly base its termination decision on father's one reported incident of domestic violence or on his criminal record alone. See *In re Mason*, 486 Mich 142, 165; 782 NW2d 747 (2010) (stating that a respondent's criminal history alone does constitute grounds for termination, and "termination solely because of a parent's past violence or crime is justified only under certain enumerated circumstances . . ." such as if a parent created an unreasonable risk of serious abuse or death of a child). Instead, the trial court provided multiple reasons for the termination of father's parental rights. It found that father had been an "angry, defiant person [his] entire life." Father had a significant criminal history starting from his youth and, after ten years in prison, was still angry. Father had a "pervasive pattern of disregard for and the violation of the rights of others." The trial court also found that father made mother an "ongoing victim" for "years." The trial court determined that the testimony of the DHHS caseworkers demonstrated that father could not live without mother and that LSH was only an afterthought to him. Thus, the trial court's determination that father's criminal history and history of being abusive was grounds for termination was based on more than just the single incident of domestic violence. *Id.*

Moreover, the trial court did acknowledge that father's drug screens were negative for methamphetamine. Nevertheless, father's mental health issues remained. The court understood that "it would take virtually every bit of strength" father had to "open up and talk to" the caseworkers and therapists in order to address his issues. Father acknowledged that he had mental disorders and should be on medications; yet, he refused to see a psychiatrist or successfully participate in counseling. The court stated that it did not see father benefiting from services. To the contrary, it predicted that father was never going to change his behavior and would continue to remain a danger. The trial court also noted that father had not even earned unsupervised visits. And, thus far, all of the training and services he had received failed to make

any difference in his life. Acknowledging the progress father had made, the trial court determined that termination was warranted because father presented a danger to LSH.

The trial court's findings are supported by the record. Evidence regarding father's treatment showed he had been attending therapy since October 2018, and was resistant to feedback. On multiple occasions, father simply walked out of rooms when people were trying to speak with him. This happened with DHHS caseworkers, at parenting classes, and even at couples counseling while discussing the incident of domestic violence. Notably, although there were not any incidents of domestic violence reported aside from the one that resulted in LSH being placed in protective custody, there was evidence father continued to be emotionally abusive toward mother. In fact, father denied he ever committed domestic violence until the day of the hearing. Father's psychological evaluation confirmed he would be a danger to LSH if he was non-complaint with his medications. Yet, father failed to take medication and to see a psychiatrist for his mental disorders because he was afraid the medication would cause physical damage to him. Because father failed to address his mental health issues, he failed to remedy one of the conditions placing LSH in danger if she was returned.

Accordingly, the evidence and testimony presented at the termination hearing supported the trial court's determination that, because father had a history of drug use and criminality; failed to address his mental health issues through medication; still had anger and abused and controlled mother; and was generally in the same position as at the time of removal, there was a reasonable likelihood that LSH would be harmed if she was returned to father's care. *Hudson*, 294 Mich App at 268. Because father does not challenge the trial court's best-interests determination, we conclude that the trial court did not clearly err by determining that termination of father's parental rights was proper under MCL 712A.19b(3)(j).

### III. BEST INTERESTS

Mother also argues that termination of her parental rights was not in LSH's best interests because the trial court justified its decision based on LSH's placement in a foster home, without addressing her bond with LSH.

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews the trial court's decision regarding the child's best interest for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Id.* When the trial court considers a child's best interests, the focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87-88. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). A trial court can also consider the length of time the child is in foster care or placed with relatives and whether it is likely that "the child could be returned to [the parent's] home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

Here, the trial court did not clearly err in determining that termination was in LSH's best interests. The record demonstrated that LSH had been in the same foster home for most of her life. It was likely that mother would need to stay drug-free for a longer period of time before LSH could possibly be returned to her. *Olive/Metts*, 297 Mich App at 41-42; *Frey*, 297 Mich App at 248-249. The trial court found that LSH was healthy, safe, and bonded to her foster parents. LSH looked to her foster parents to meet all her needs. In the foster home, LSH had love, permanency, and stability. The foster parents wanted to adopt her. *Olive/Metts*, 297 Mich App at 41-42; *Moss*, 301 Mich App at 87-88.

On the other hand, while LSH had a bond with mother, she could not provide LSH with the safety, stability, and permanence she needed. *Olive/Metts*, 297 Mich App at 41-42. Specifically, the record demonstrated that mother's sobriety was new and she opted to continue to plan to parent with father despite recognizing the danger he posed to LSH.

Accordingly, the trial court did not clearly err in concluding that termination of mother's parental rights was in LSH's best interests.

Affirmed.

/s/ James Robert Redford
/s/ Kathleen Jansen
/s/ Anica Letica